JOSEPH L. WARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ward v. Commissioner
Docket No. 3197-78.
United States Tax Court
T.C. Memo 1979-378; 1979 Tax Ct. Memo LEXIS 146; 39 T.C.M. (CCH) 159; T.C.M. (RIA) 79378; September 17, 1979, Filed Thomas A. Falik, for the petitioner. Eddie L. Gibson, for the respondent. DAWSON
SUPPLEMENTAL MEMORANDUM OPINION DAWSON, Judge: On July 3, 1979, the Memorandum Opinion (T.C. Memo. 1979-252) was filed in this case. Petitioner has since filed a Motion for Reconsideration of Opinion pursuant to Rule 161, Tax Court Rules of Practice and Procedure. In his motion petitioner advances essentially three distinct arguments. First, he argues that a portion of our opinion misstates Texas law insofar as it relates to the interpretation of consent judgments in divorce actions. In support of his argument he cites a recent decision of the Texas Supreme Court, McCray v. McCray, No. B-8272 (Tex., filed June 27, 1979). Second, petitioner *147 contends that our statement in the opinion that "the amount and timing of the payments in the decree differed markedly from the terms of the written agreement" is inaccurate. Third, petitioner maintains that our opinion is inconsistent with the legislative purpose behind section 71(b) as expressed by the United States Supreme Court in Commissioner v. Lester, 366 U.S. 299 (1961). We find no merit in any of petitioner's contentions. Petitioner originally argued that the divorce decree was a consent decree under Texas law which must be construed under principles of contract law so as to give effect to the intent of the parties. That intent, petitioner claimed, was that for tax purposes the payments were to be treated as alimony rather than child support. We concluded, however, that only that part of the judgment which is based upon the agreement of the parties is governed by the laws relating to contracts. We then determined that the court order in the decree which fixed the payments in issue for child support did not arise from the agreement of the parties, but rather from the exercise of court authority under section 14.05(a) of the Texas Code. Tex. Fam. *148 Code Ann., tit. II, sec. 14.05(a) (Vernon). Thus, we held that the court order operated to fix the payments as child support notwithstanding the fact that the parties intended the payments to be deductible alimony. Petitioner maintains, however, that the entire decree, including the portion containing the court order for child support, must be interpreted according to contract law. To say the least, we are not impressed with petitioner's attempts to confound an already confused area of Texas law. The arguments set forth in petitioner's motion are not only unpersuasive but also contradictory, and we still adhere to our previous conclusion that the court order for support does not arise from the agreement of the parties and must be construed without regard to the intent of the parties. Petitioner relies on McCray, supra, and the cases cited therein to support his contention that the entire divorce decree must be interpreted as if it were a contract between the parties. The issue before the court in McCray, however, is quite different than the issue in this case. That case involved a husband and wife who, in anticipation of divorce, entered into a property settlement *149 agreement which called for the husband to make alimony payments. The agreement was later approved by the court and incorporated in the divorce decree. After the divorce the husband defaulted on the alimony obligation and the wife brought an action to enforce payment. The Court of Civil Appeals held that the mere recitation of the agreement in the decree did not constitute an award of the court and thus the agreement could not be enforced as part of the judgment. In a per curiam opinion the Texas Supreme Court reversed, holding that even though the contractual alimony agreement did not reside in the mandatory or decretal portion of the decree it was nevertheless enforceable as a part of the judgment since it appeared in the recitals and was approved by the court. [1]
Thus, the court did not address the issue of whether all parts of the decree, both mandatory and decretal, must be interpreted according to contract law. Rather, it dealt only with the issue of whether a contractual agreement between the divorced couple is enforceable *150 as part of the judgment if it is approved by the court and incorporated in the decree. However, certain dicta in the opinion, if read literally, would appear to support petitioner's contention. The court stated as follows: Similarly, in the Jones case this court was called upon to interpret a community property settlement contained in a prior divorce decree. We stated: "This agreed judgment must be interpreted as if it were a contract between the parties and the interpretation thereof is governed by the laws relating to contracts, rather than laws relating to judgments." [Citations omitted.] Although rules relating to contract interpretation apply, an agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding. [Citations omitted.] Petitioner argues that the phrase "agreed judgment" as it is used in McCray is intended to refer to the entire divorce decree, but we think petitioner's literal interpretation is illogical and ignores the substance of the case law from which the McCray dicta was distilled. The McCray opinion relied heavily on Ex Parte Jones, 358 S.W. 2d 370 (Tex. 1962). *151 The issue in that case was whether the district court could enforce a property settlement agreement incorporated in a divorce decree by exercising its contempt power. The Texas Supreme Court observed that a decree can be enforced by contempt proceedings only when "the nature of the decree is such as is authorized by statute." Jones, supra at 375. The Court went on to hold that none of the agreed settlement decree at issue was derived from or controlled by statutory provisions, and offered the following rationale (358 S.W. 2d at 375): Upon the face of the judgment, it appears that the provisions relating to the agreement to construct the residence and convey the property to Trustees for the benefit of the minor children are based entirely upon the terms of the settlement agreement between the parties. This agreed judgment must be interpreted as if it were a contract between the parties and the interpretation thereof is governed by the laws relating to contracts, rather than laws relating to judgments. * * * [Citations omitted.] [Emphasis added.] Although the McCray opinion quoted only the second sentence of the foregoing paragraph, *152 we think the second sentence must be interpreted together with the first in order to determine the true meaning of the opinion as it relates to theparticular issue before us.We think the court intended that only that part of the decree which is based on the agreement of the parties is to be interpreted as if it were a contract. In direct contrast to Jones, where no part of the agreed judgment represented a court order issued under statutory authority, the court order for child support here undeniably constitutes the exercise of court authority under section 14.05(a) of the Texas Code and does not arise from the agreement of the parties. In Francis v. Francis,412 S.W. 2d 29 (Tex. 1967), (also cited in the McCray opinion), the Texas Supreme Court again emphasized the distinction between the legal effect of an agreement of the parties incorporated in the divorce decree and the legal effect of a court order in the decree. This time the court's attention was focused on a provision in a property settlement agreement (approved by the judge and incorporated in the decree) which required the husband to pay alimony. The husband sought a declaratory judgment to have *153 the alimony obligation declared void. The court held that although court-ordered alimony to be paid after the divorce judgment is rendered contravenes Texas statutes and public policy, contractual obligations to make payments for the wife's support are nevertheless enforceable under principles of contract law. The court further held that approval and incorporation of the agreement by the court does not alter the contractual nature of the obligation. [2] Thus, we think the Francis decision reinforces our conclusion that the only part of the decree which must be interpreted in accordance with contract law is that which arises from the parties' agreement. Our resolution of this issue is squarely supported by Plumly v. Plumly,210 S.W. 2d 177 (Tex. Ct. App. 1948), a case cited in our original opinion. Again, the case involved a divorce decree which incorporated a property settlement agreement between the parties. In addition to dividing *154 their marital property, the agreement also provided that the husband would pay certain amounts to the wife for child support. In sustaining the trial court's denial of the husband's motion for modification of the child support obligation, the court stated (210 S.W. 2d at 179): In other words, hat part of the decree granting the divorce and awarding the custody and care of the two children was not based upon any agreement, but that part of the decree which settles the property rights of the parties and provides for the support and maintenance of the children is based upon the agreement of the parties and is therefore an agreed judgment. That part of the judgment which was based upon the agreement of the parties is governed by the laws relating to contracts, rather than laws relating to judgments. [Citations omitted.] This is precisely the conclusion we freached in our previous opinion, and, in addition to being eminently logical, it is also entirely consistent with the pronouncements of the Texas Supreme Court in this area. [3]
*155 Petitioner further argues that even if one assumes that only that part of the decree which represents the agreement of the parties is to be interpreted under contract law, the court order for child support was nevertheless agreed to by the parties. Petitioner claims that the parties to the divorce drafted the decree themselves and that they intended for the wife to be able to enforce the child support payments by contempt proceedings if necessary. [4] Thus, awccording to petitioner, the parties deliberately drafted the decree so as to include a court order for child support, and the judge merely approved this "agreement" of the parties. We find it unnecessary to address the obvious contradiction in petitioner's argument, which on the one hand asks us to construe a divorce decree so as to give effect to the parties' intentions, and on the other hand tells us that the parties intended for the court to order child support payments. We also ignore the fact that the record contains no evidence *156 whatsoever to indicate that the parties agreed to the court order. Instead, we dispose of the argument by recognizing the simple fact that the parties to a divorce cannot "agree" to such an order. Certainly the judge is not bound under Texas law to issue a court order for child support simply because the parties agree to it. Furthermore, in the event he decides to do so, he necessarily exercises his statutory authority, irrespective of the parties' agreement, approval, consent, or otherwise. Accordingly, the court order for child support does not stem from the agreement of the parties and principles of contract law are inapplicable to that portion of the decree. Petitioner's second contention concerns our statement that the payments required by the settlement agreement differed in amount and timing from the payments ordered by the court. The settlement agreement called for the following payments: (a) $350.00 twice per month for the first sixty-three (63) months of said term; (b) $300.00 twice per month for the next fifty-seven (57) months except if wife and remarried, the amount of (a) or (b) shall be decreased by $100.00 per payment; (c) $200.00 twice per month for the *157 next thirty-six (36) months; (d) $150.00 twice per month for the last thirty months of said term. The court decree, however, ordered the following payments: (a) $250.00 twice per month until the parties' eldest child, Brian Joseph Ward, shall attain age eighteen (18) years on December 15, 1977. (b) $200.00 twice per month from December 15, 1977 until the parties' second child, Mary Dawn Ward, shall attain age eighteen years on September 2, 1985. (c) $150.00 twice per month from September 2, 1985 until the parties' youngest child, Scott Patrick Ward shall attain the age eighteen years on March 21, 1988. Petitioner maintains that since the settlement agreement provided for a $100 reduction in the amount of the bimonthly payments in the event the wife remarried, that portion of the payments should be regarded as alimony and the balance as child support. [5] The portion of the payments which is in reality child support, he argues, does not materially differ in amount or timing from the payments specifically ordered by the court for child support. Thus, he contends, the statement in our opinion is inaccurate. *158 We did not intend to compare the payments under the agreement which were "apparently" for the support of minor children with the child support payments ordered in the decree. Rather, we simply compared petitioner's total obligations under the agreement with those imposed by the court order, and that comparison reveals marked differences. Those differences are significant primarily because they tend to prove that the use of the words "to petitioner for the parties' minor children" in the order was deliberate rather than inadvertent, and that the court intended to exercise its statutory authority to insure adequate support for the couple's children. See, e.g., Carle v. Commissioner,54 T.C. 827, 831 n. 7 (1970); Siegert v. Commissioner,51 T.C. 611, 619 (1969). Finally, petitioner contends that our decision does not comport with the analysis of the legislative purpose of section 71(b) in Commissioner v. Lester,366 U.S. 299 (1961). In that case the Supreme Court discussed the committee reports and hearings which accompanied the enactment of section 22(k) (the predecessor to section 71(b) of the 1954 Code) and concluded (366 U.S. at 304): *159 As we read § 22(k), the Congress was in effect giving the husband and wife the power to shift a portion of the tax burden from the wife to the husband by the use of a simple provision in the settlement agreement which fixed the specific portion of the periodic payment made to the wife as payable for the support of the children. * * * Petitioner argues that our decision in the present case conflicts with Lester since it effectively strips the parties of their power to arrange the tax consequences of support payments to their liking. The factual situation presented in Lester, however, is altogether different than the one we deal with here. Lester involved the interpretation of an agreement of the parties incorporated in he divorce decree, whereas the present case involves a conflict between an agreement of the parties and a court order. Lester simply recognized the fact that section 71(b) provides an opportunity for the parties to predetermine the tax effects of support payments by agreement. Since section 71(b) is written in the disjunctive, however, a court may still fix the payments as child support in the decree, notwithstanding any agreement of the parties *160 to the contrary. See, e.g., Engelhardt v. Commissioner,58 T.C. 641 (1972); Thomson v. Commissioner,42 T.C. 825 (1964), affd. sub non. Metcalf v. Commissioner,343 F.2d 66 (1st Cir. 1965). Our opinion is not inconsistent with Lester; it merely addresses a different issue. Accordingly, we see no reason to modify our original opinion. Petitioner's motion for reconsideration will be denied, and as previously indicated, Decision will be entered under Rule 155. Footnotes
1. The legal significance of the incorporation of a settlement agreement in the divorce decree is discussed in our original opinion in footnote 5.↩
2. However, as the court held in McCray v. McCray,↩ No. B-8272 (Tex., filed June 27, 1979), the obligation is still enforceable as part of the judgment if it appears in the recitals and is approved by the court.
3. Petitioner argues that the decision in Brady v. Hyman,230 S.W. 2d 342 (Tex. Ct. App. 1950), which we cited in support of the holding of our original opinion, actually supports his contention that the child support order is to be interpreted as part of a contract between the parties. Petitioner has apparently misread the case. In Brady the divorce decree contained a court order for child support as well as a provision in the approved settlement agreement which required the husband to pay child support. The court held that the child support provision in the settlement agreement should have been interpreted as part of a contract and was not subject to modification by the court. On the other hand, the court recognized that the court-ordered child support, which is enforceable by contempt proceedings, is subject to modification by the court. The instant case is distinguishable in that the court-approved settlement agreement does not contain a provision for child support. Thus, Brady↩ is consistent with the other decisions discussed in this supplemental opinion.
4. As pointed out in our original opinion, the court may not enforce child support payments by use of its contempt power unless the court specifically orders such payment sin the decree.↩
5. It is clear, of course, that the use of the phrase "to Wife for her and the parties' minor children's support and maintenance" in the settlement agreement would normally insure deductibility of the entire amount of the payments under the holding of Commissioner v. Lester,366 U.S. 299↩ (1961), even though the parties actually intended that a fixed portion of the payments would be used for child support.