TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03 -00739 -CV





Edwin Howard Hooks, Jr., Appellant


v.


Deborah Kay Davis, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. GN203423, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING







M E M O R A N D U M O P I N I O N





Edwin Howard Hooks, Jr. appeals the trial court=s summary judgment in favor of his ex-wife, Deborah Kay Davis. Davis sued Hooks for breach of their agreement incident to
divorce when he failed to make monthly and lump-sum alimony payments to her. On appeal, Hooks asserts that Davis=s summary-judgment evidence was neither competent nor
uncontroverted and that there was a fact issue regarding whether their agreement is enforceable. We hold that the agreement is enforceable and affirm the judgment of the trial court.



BACKGROUND


Davis filed suit for divorce against Hooks in 1999.The trial court granted the divorce in 2000 and approved their agreement incident to divorce (the Agreement), which both
Hooks and Davis signed. The Agreement set out how the couple=s property was to be divided and provided for monthly alimony for ten years and two $45,000 lump-sum
payments to be paid by Hooks to Davis. The monthly alimony payments required Hooks to pay Davis $5,000 per month for 120 months, beginning on February 29, 2000. The
first $45,000 lump-sum payment, designated in the Agreement as alimony, was to be paid on June 30, 2002. The other $45,000 lump-sum payment, designated in the
Agreement=sASchedule 1@as property awarded to Davis, was to be paid on June 30, 2003.[1]

Hooks paid the monthly alimony through May 2002.At that time, according to his deposition, he could no longer make the payments because his business was not doing well
and he did not have the money to pay. He also did not make the first $45,000 lump-sum payment due in June 2002, apparently for the same reason. He has not paid monthly
alimony since June 2002 or the two $45,000 lump-sum payments due in 2002 and 2003. Hooks also testified that the net worth of the business he solely owns is about $300,000,
that he pays himself $20,000 a month as salary, and that he was awarded a bonus in excess of $100,000 in the year 2000 and that he received a bonus of some amount in 2002
but not in 2003.

Davis filed suit for breach of contract in September.Shortly thereafter, Davis filed a motion for summary judgment, to which she attached the Agreement and excerpts from
Hooks=s deposition, among other documents. After a hearing, the trial court granted Davis=s summary-judgment motion.


DISCUSSION

Because the propriety of a summary judgment is a question of law, we review the trial court=s decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.
1994);Texas Dep=t of Ins. v. American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.CAustin 1999, no pet.). The standards for reviewing a summary judgment are
well established: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding
whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must
be indulged in favor of the nonmovant and any doubts resolved in its favor.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).


Hooks first asserts that Davis=s summary-judgment evidence was not competent and was controverted, precluding summary judgment in her favor.  Regarding the competency
of the evidence, Hooks asserts that Davis=s summary-judgment evidence was not submitted timely because she filed her amended motion for summary judgment on the day of
the hearing and attached to the motion the same summary-judgment evidence she had previously submitted.[2]  Specifically, Hooks argues that it was not until this amended
motion that Davis Aincorporated by reference@ the attached summary-judgment evidence.  He insists that because Davis did not get leave of the court to file her
Alate@summary-judgment evidence, it was not competent.  See Benchmark Bank v. Crowder, 919 S.W.2d 657, 663 (Tex. 1996) (summary-judgment evidence filed two days
before hearing was late and could not, therefore, be filed except with leave of court); see also Tex. R. Civ. P. 166a(c).

Although Hooks correctly cites the principle of law concerning late summary-judgment evidence, that rule does not apply here. Davis attached several exhibits to her original,
timely summary-judgment motion, and the original motion specifically referred to this attached evidence:



In support of this Motion, Plaintiff refers the Court to the pleadings and requests that the Court take judicial notice of all such pleadings in the file, the Agreement of the parties
(Exhibit >A=), the Affidavits of John F. Campbell as to attorney=s fees and entitlement under the Agreement (Exhibit >B and C=), the answers of Defendant to Plaintiff=s
Request for Admissions (Exhibit >D=) with request numbers 1-4 and 17 to be deemed as admitted, and this position testimony of the Defendant set forth in the Motion and
attached also as Exhibit >E.=






We understand Hooks to be arguing that because Davis=s second amended motion for summary judgmentCfiled on the day of the hearingCincluded additional language that
Aall of these exhibits are incorporated herein by reference and made a part hereof for all purposes,@ any prior, timely summary-judgment motions purporting to incorporate
their attached exhibits were not competent because they did not use the magic language of Aincorporated by reference.@ We reject this argument.  See Boeker v. Syptak, 916
S.W.2d 59, 62 (Tex. App.CHouston [1st Dist.] 1996, no writ) (paragraph in summary-judgment motion that expressly and specifically identified attached affidavits as being
relied upon as summary-judgment evidence was sufficient to place such affidavits before court as evidence).  Davis=s first summary-judgment motion clearly indicated that it
was relying upon the attached exhibits A through E as evidentiary support.  We overrule Hooks=s first issue.

To prevail on her breach-of-contract claim, Davis had to prove:  (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the
contract by the defendant, and (4) damages to the plaintiff resulting from the breach.  Roundville Partners, L.L.C. v. Jones, 118 S.W.3d 73, 82 (Tex. App.CAustin 2003, pet.
denied).  Hooks contests only the first requirement, claiming that there is a fact issue on whether there is a valid agreement.

Agreements incident to divorce become enforceable contracts when they are incorporated into a final decree.  Markowitz v. Markowitz, 118 S.W.3d 82, 90 (Tex. App.CHouston
[14th Dist.] 2003, pet. denied); Traylor v. Traylor, 789 S.W.2d 701, 703 (Tex. App.CTexarkana 1990, no writ).  A person may contract to support his spouse, and that
obligation, to the extent it exceeds his legal duty, is a debt.  Ex parte Hall, 854 S.W.2d 656, 658 (Tex. 1993) (orig. proceeding).  Where the duty to make support payments
arises from an agreement between the parties, rather than from a divorce decree based entirely upon the power conferred by the family code, the rights and obligations of the
parties are governed by the rules of contract.  See Hutchings v. Bates, 406 S.W.2d 419, 420 (Tex. 1966); Griffin v. Griffin, 535 S.W.2d 42, 43-44 (Tex. Civ. App.CAustin 1976,
no writ).


Hooks argues in his brief that after paying alimony for seventeen months, in June 2002 he realized that he had not signed the Agreement voluntarily.  Coincidentally, this was
the same month that the first payment of $45,000 came due. However, because the Agreement was approved and incorporated into the divorce decree by the trial court, it
constituted part of a valid and binding final judgment.  See Ex parte Gorena, 595 S.W.2d 841, 844 (Tex. 1979); McCray v. McCray, 584 S.W.2d 279, 281 (Tex. 1979).  An
agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding.  Gorena, 595 S.W.2d at
844; McCray, 584 S.W.2d at 281.  Parties to an agreed judgment are prohibited from raising contractual defenses in an action to enforce the agreement when those defenses
attack the validity of the agreement at its inception, execution, or at the time it is approved by the court in the divorce decree.  Spradley v. Hutchison, 787 S.W.2d 214,
219‑20 (Tex. App.CFort Worth 1990, writ denied); Giddings v. Giddings, 701 S.W.2d 284, 289 (Tex. App.CAustin 1985, writ ref=d n.r.e.).


Nonetheless, Hook asserts that Davis=s summary-judgment evidence supporting the existence of a valid agreement is controverted, precluding summary judgment. See Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  He cites the following Acontroverting@ evidence:  (1) a memo dated February 7,
2000 from Hooks to his former counsel, in which he mentions that the dates for the two $45,000 payments should be in October of 2002 and 2003, rather than in April of those
years; (2) a letter dated March 7, 2000 from Hooks=s former counsel to Davis=s counsel negotiating the details of the Agreement to be signed; (3) an undated and unsigned
spreadsheet indicating which assets are to go to which spouse, indicating two cash payments of $45,000 that Hooks is to make to Davis, in addition to the 120 monthly alimony
payments of $5,000; (4) Hooks=s former attorney=s handwritten notes, dated late January 2001, in which she indicates Hooks=s agreement to make two $45,000 payments to
Davis, in October of 2001 and 2002; and (5) Hooks=s affidavit, in which he states, AThe Agreement Incident to Divorce that Plaintiff alleges I owe her money is not the same
agreement I had with her.@  In other words, Hooks asserts that the Agreement does not reflect the terms as he remembers them.[3]  However, he cites no facts supporting his
conclusory statement in his affidavit that the Agreement Ais not the same@as the one he had with Davis.  Conclusory statements unsupported by facts in an affidavit are
insufficient to raise a genuine issue of fact to prevent the rendition of summary judgment.  See Texas Div.‑Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex.
1994);Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984).  Details of negotiations that preceded a final agreement do not undermine the validity of an agreement signed
by both parties and approved by the court granting the divorce.  See Smith v. Smith, 794 S.W.2d 823, 827 (Tex. App.CDallas 1990, no writ); Gulf Oil Corp. v. Spence & Howe
Constr. Co., 356 S.W.2d 382, 385‑86 (Tex. Civ. App.CHouston 1962), aff=d, 365 S.W.2d 631 (Tex. 1963).  Furthermore, parties to a written contract have an
obligation to read what they sign; absent actual or constructive fraud, they are not excused from the consequences attendant upon a failure to read the contract. G-W-L, Inc. v.
Robichaux, 643 S.W.2d 392, 393 (Tex. 1982), overruled on other grounds, Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 355 (Tex. 1987); Thigpen v. Locke, 363 S.W.2d
247, 251 (Tex. 1962).  Hooks has claimed no fraud, misrepresentation, or concealment.


We conclude that none of Hooks=s evidence creates a fact issue as to the validity of the signed Agreement.  Hooks=s argument is essentially that the dates of the two $45,000
payments set out in the Agreement are not the same dates that he remembers or that were discussed during negotiations leading to the Agreement. His own deposition testimony
indicates that he did agree to make two $45,000 paymentsChe simply contested the dates he remembered them being due.  However, Hooks signed the Agreement; he has not
asserted that his signature was forged or that he signed under duress or coercion.[4]  Hooks testified that although he had been paying the monthly alimony pursuant to the
Agreement, he stopped paying it and did not make the two $45,000 payments simply because he did not have the money.  Hooks has not presented any evidence to create a fact
issue on whether there was a valid contract.  The Agreement was incorporated into the divorce decree, and Hooks is bound by its terms.  See Gorena, 595 S.W.2d at 844.  We
overrule his second issue and hold that the trial court properly granted summary judgment in favor of Davis.

 

 

__________________________________________

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   July 29, 2004

[1]  The Agreement also provided that Hooks was to pay Davis $269,000 on August 1, 2000 or on the closing date of the sale of a piece of real property and $85,000 on the date
of divorce; Hooks testified that he agreed to make these payments and did make both of them. 

[2]  The only difference in the evidence submitted with Davis=s amended motion was an amended affidavit for attorney=s fees, which contained only a non-substantive addition
and does not affect the validity of the Agreement.

[3]  He also appears to be implying that perhaps the Agreement was tampered with after he signed it; however, there is no evidence of such tampering, and he does not explicitly
argue this point.

[4]  Hooks does state in his brief=s AStatement of Facts@ that he Ainvoluntarily@signed the Agreement, at the insistence of his former attorney.  However, Hooks does not
assign this allegation as an error or brief the issue; rather, he argues that he Adid not agree@to the payments and that the Agreement does Anot reflect the agreement@he had
with Davis.  Hooks has therefore waived any error associated with his Ainvoluntary@ signing of the Agreement.  See Tex. R. App. P. 38.1(e), (h); see also In re Barr, 13
S.W.3d 525, 555 (Tex. 1998).  Furthermore, Hooks has neither alleged duress or coercion in his signing the Agreement, nor has he submitted any factual evidence to support his
conclusory statement. We also note that the Agreement states that each party A[e]nters into this Agreement voluntarily [and] . . . [h]as carefully read each provision of this
Agreement.@ His suit against this former attorney was initially a part of the present cause but was severed and is still pending in Travis County district court.